UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA RICHKO, as Personal Representative
of the ESTATE OF JEFFREY HORVATH,

    Plaintiff,

v.

                      Case Number 12-CV-11232
                      Honorable Denise Page Hood

WAYNE COUNTY SHERIFF'S DEPARTMENT,
a Municipal Corporation, COUNTY OF WAYNE,
a Municipal Corporation, APRILWILLIAMS,
DEPUTY MEARS, JEREMY MEINEKE,
SERGEANT TAYLOR-BEAVERS, LARRY
CAMERON, and ANDRE STINSON,
Individually and Jointly,

    Defendants.
_____/

## ORDER DENYING IN PART AND DEEMING MOOT IN PART DEFENDANTS' MOTION TO DISMISS & MOTION FOR SUMMARY JUDGMENT [#40]

    Before the Court is a Motion to Dismiss & Motion for Summary Judgment on behalf of the remaining Defendants in this case **[Docket No. 40, filed April 14, 2014]**. On May 28, 2014, the parties filed a stipulated order dismissing Defendants Wayne County Sheriff's Department, Matthew Mears, Jeremy Meinke, and Lamiko Taylor-Beavers **[Docket No. 51]**. The Motion to Dismiss pertains to Defendant Wayne County Sheriff's Department only, and therefore, it is deemed **MOOT.** Remaining are Defendants Wayne County, April Williams, Larry

Cameron, and Andre Stinson. Plaintiff filed a Response to the Motion **[Docket No. 47, filed May 19, 2014]** and the remaining Defendants filed a Reply to the Response **[Docket No. 52, filed June 9, 2014]**.

I.  BACKGROUND

On March 20, 2013, Plaintiff Linda Richko, as the personal representative of the Estate of Jeffrey Horvath, filed this an action for money damages pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988, and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff filed an Amended Complaint (with removal of the state law claims) on April 27, 2012 **[Docket No. 9]**. On April 2, 2013, Plaintiff filed a Second Amended Complaint. The Complaint was filed against the above-named Defendants, in their individual capacities and/or as the entities in charge of running the Wayne County Jail and/or based on the above-named Defendants being in charge of supervising the employees, agents, officers and all others entrusted with positions and responsibilities of the Defendants.

The Second Amended Complaint alleges that on or about September 13, 2011, Horvath was arrested on an outstanding warrant by Dearborn Police at the Marathon gas station located at Southfield Road and Oakwood Boulevard, in the City of Dearborn, Michigan. He was booked and transferred to the custody of the Wayne County Sheriff's Department where he remained in the Wayne County Jail

System for the following eight days because he was unable to post bond.  On or about September 20, 2011, Horvath was transferred from his cell into a cell located in the area of the jail reserved for those detainees/inmates with mental illness because the toilet in Horvath's cell had been malfunctioning.  At some time between Horvath's assignment to this new cell and the morning of September 21, 2011, inmate Brandon Gillespie (hereinafter referred to as "Gillespie"), was placed in Horvath's cell.  Plaintiff alleges that Gillespie was placed in the cell with Horvath despite the fact that Defendants knew or should have known about Gillespie's dangerous and/or violent propensities, including the serious risk of harm or death to the Horvath based on Gillespie's violent schizophrenic history.  Gillespie had also been incarcerated on felony charges of aggravated assault.

Plaintiff contends that according to Detroit Police Department records, on September 21, 2011 between the hours of 7:40 a.m. and 9:10 a.m., Gillespie "brutally assault[ed] [Horvath] . . . by punching him the head and face several times, delivering blows to his face with his foot and knee, stabbing him multiple times in the face with a pencil, and sodomizing him either pre- or post-mortem, causing serious injuries resulting in his death."  Plaintiff states that, upon information and belief, during the assault Horvath "called for help from the Defendants [John Does 1-5], screaming 'let me out, let me out,' however, the Defendants willfully and wantonly disregarded his pleas for help and/or refused to

intervene." Plaintiff states that Horvath's body was found between two mattresses on the floor of the jail cell and that, further, according to Wayne County Jail officials, at the time the body was taken from the cell, Horvath's eyes were bloody and swollen, with multiple puncture wounds around the eyes, the bridge of his nose, and his lip pushing into his teeth." Horvath also suffered from "hemorrhaging blood between the scalp and skull and into both jaws."

Plaintiff's Second Amended Complaint seeks relief based on the following claims for relief: Violation of the United States Constitution against Defendants Wayne County Sheriff's Department and the County of Wayne (Count I); Federal Statutory and United States Constitutional Violations Against the Individual Defendants April Williams, Deputy Mears, Jeremy Meineke, Sergeant Taylor-Beavers, Larry Cameron, and Andre Stinson (Count II); and Claim for Reasonable Costs, Disbursements and Attorney Fees in Bringing Actions Under 42 U.S.C. §§ 1983, 1985, 1986 Pursuant To 42 U.S.C. § 1988 As To All Defendants (Count V). Prior to filing the Second Amended Complaint, Plaintiffs state law claims (Count III & IV) were dismissed **[Docket No. 7, April 18, 2012]**.

Plaintiff claims that "[a]t all material times, Defendants were the exclusive custodians of [Horvath] following his transfer into their custody and were charged with the responsibility of monitoring [Horvath] and those around him to ensure that [Horvath's] health and welfare would not be placed in jeopardy while

[Horvath] was in the custody of the Defendants." Plaintiff contends that Horvath's death was "a result of the willful and wanton, grossly negligent, reckless and otherwise negligent conduct of Defendants."

## II. STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the

5

[nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### III. ANALYSIS

**A. Municipal Liability Pursuant to 42 U.S.C. § 1983 (Count I)**

In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or

customs. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Monell,* 436 U.S. at 690.

The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). However, "an 'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered.*' " *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 515 (6th Cir.1991) (quoting *Pembaur,* 475 U.S. at 481) (emphasis added). In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id.* A municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993).

In their Motion, Defendants argue that Defendant Wayne County is entitled to summary judgment on the constitutional claims, because it has policies and procedures to ensure safe and secure housing for all inmates, and the single incident of Horvath being murdered does not constitute deliberate indifference by

7

the municipality. Defendants also allege that Plaintiff has not provided any evidence to support the allegations that the injuries were the result of a failure to discipline the employees and the ratification of the employees' misconduct.

Plaintiff argues that Defendant Wayne County's policies in effect at the time of Horvath's death fail to meet the Constitutional requirements under the Eighth and Fourteenth Amendments to take reasonable measures to prevent inmate-on-inmate violence. Plaintiff argues that Defendant Wayne County had policies that resulted in inadequate screening, fostering a custom to fail to protect, having a practice or policy of inadequately monitoring potentially dangerous inmates, having a practice or policy of not sequestering potentially dangerous inmates, failure to train, failure to discipline, and ratifying wrongful conduct of employees.

Municipal liability may be found where there is an inadequate policy or where established fixed plans become the de facto policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 1299, 89 L. Ed. 2d 452 (1986). Next, the Court must determine if the policy constitutes deliberate indifference to inmate safety in violation of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994). "Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To satisfy the subjective and objective tests required for a finding of

deliberate indifference, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the official's "state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834. "Acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994).

Defendant Wayne County's Jail Health Services Policy & Procedures require a health care screening of all inmates upon arrival, including Medical and Mental Health observations and questions that are answered in the Information Management System ("IMS") (Pl.'s Resp. to Mot. for Summ. J., Ex. X, "Wayne County Jail Screening Policies"). The screenings are supposed to include an inquiry into mental health problems and observation of behavior (*Id.*). Inmates that require mental health services are flagged and transferred to the Mental Health Department, and a Mental Health Professional or Registered Nurse is to perform a mental status examination (*Id.*). The inmate is then required to be appropriately housed, based on the findings, until further examination by a psychologist or psychiatrist (*Id.*).

After Gillespie was admitted to Wayne County Jail on September 19, 2011, for charges of felonious assault for threatening a bus driver with a knife, Dawn

Benette, a medical assistant interviewed him and referred him to see medical staff after he indicated he was bipolar and schizophrenic (Pl.'s Resp. to Mot. for Summ. J., Ex. E, "Deposition of Dawn Benette" at p. 42). On the intake form, Benette notes Gillespie is "acting very strange," but that he "denies drug use" (*Id.*, Ex. F, "Brandon Gillespie: Intake Form" at p. 3). Next, Renella Thomas, R.N. evaluated Gillespie based on the flag, and Gillespie told her that he was on medication but didn't have the medication with him (*Id.*, Ex. G, "Deposition of Renella Thomas" at p. 63). Thomas did not call the psychiatrist on duty for a few hours, until between 6:00 and 7:00 a.m., because Gillespie appeared stable (*Id.* at pp. 79-80). Thomas had Gillespie return to the general prison population at around 3:00 a.m. to be evaluated by a psychiatric social worker later in the day (*Id.* at pp. 71, 87-88).

On September 20, 2011, at 7:00 p.m., Defendant Larry Cameron, a social worker, conducted a mental status examination ("MSE") and discovered that Gillespie had 2,334 encounters in the Mental Health Wellness Information Network ("MH-WIN"), but Cameron did not know what an "encounter" was nor did he investigate further (*Id.*, Ex. L, "Deposition of Larry Cameron" at pp. 160-161, 167-168). Defendants state that "Cameron did not consult any other information in the MHWIN system, because he did not need to do so in order to complete the mental status examination" (Defs.' Mot. for Summ. J., p. 13). Cameron noted that Gillespie was hospitalized six times for depression and hearing

10

voices, and that Gillespie had not taken his medications for six days (Pl.'s Resp. to Mot. for Summ. J., Ex. M, "Brandon Gillespie: Mental Status Examination" at p. 1). On the same day, Cameron ordered that Gillespie be housed in 4SW cell 10 and noted mental illness, but did not indicate that Gillespie should be housed separately (*Id.*, Ex. N, "Brandon Gillespie: Housing Report" at p. 1).

Gillespie was eventually moved to cell 14 with Horvath, since there were no requirements to house him alone. The next morning, Gillespie killed Horvath. Gillespie claims he had auditory hallucinations that "hurt [his] eardrums" and he could "her them having sex, yelling at [him], trying to make deals with [him]" that morning (*Id.*, Ex. O, "Brandon Gillespie: Wayne County Jail Medical Records" at p. 1).

Viewing the facts in a light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendant Wayne County had a policy that constituted deliberate indifference to inmate safety in violation of the Eighth Amendment. Defendant Wayne County had a de facto policy of not requiring a review of readily-available prior mental health records, including the MH-WIN records. Failing to adequately review an inmate's mental health records after the discovery of mental health issues, and then placing him in the same cell with another inmate before investigating further may be considered a reckless disregard of the risk of harm to the other inmate, which is sufficient to satisfy the deliberate

indifference standard. *See Farmer*, 511 U.S. at 836. For these reasons, the motion for summary judgment on this claim is denied.

### B. Statutory and Constitutional Violations by Individual Defendants (Count II)

Plaintiff claims damages for wrongful death, conscious pain and suffering, physical injuries, and all other damages, under 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments to the U.S. Constitution against Defendants Williams, Cameron, and Stinson.

In *Farmer*, the Supreme Court explained the standard for deliberate indifference by a prison official as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.

Defendant Cameron was aware that Gillespie had 2, 334 encounters registered on MH-WIN, was hospitalized six times for depression and hearing voices, and that he had not taken his medications for six days (*supra*). Viewing the facts in a light most favorable to the Plaintiff, there is a genuine issue of material fact as to whether failing to inquire further about Gillespie's mental health

12

background was reckless disregard of the excessive risk of harm to Horvath. *See Farmer*, 511 U.S. at 836.

Defendant Williams, a nurse, was on the ward distributing medications to inmates at around the same time that Horvath was killed, and was the first official to discover the attack. She alerted Defendant Stinson, a guard who was in the duty station on the ward that morning. Both Defendants deny hearing the attack on Horvath or that they knew what was going on. Plaintiff has presented evidence that other inmates on the ward heard signs of the altercation, including banging, thumping sounds, and someone yelling of "Let me out! Let me out!" (Pl.'s Res. to Defs.' Mot. for Summ. J., Ex. U, "Inmate Witness Statements"). Other inmates, however, stated they did not hear anything. Defendant Stinson stated that he "may be able to hear some noise" from the duty station (*Id.*, Ex. R, "Deposition of Andre Stinson" at p. 32). Viewing the facts in a light most favorable to Plaintiff, Defendants Williams and Stinson may have had notice of the attack against Horvath, and their failure to investigate or intervene may rise to the level of reckless disregard of the excessive risk of harm to Horvath. *See Farmer*, 511 U.S. at 836. The Court will not grant summary judgment on these claims.

**C. Qualified Immunity**

Defendants Williams, Cameron, and Stinson further argue that they are entitled to qualified immunity on the claims against them. Under certain

13

circumstances, public officials are shielded from liability under the doctrine of qualified immunity, which insulates "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is generally a threshold defense whose applicability is to be determined by the trial judge. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988). The Supreme Court has set forth a two-part test to determine whether qualified immunity should attach. First, the court must decide whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155, 150 L. Ed. 2d 272 (2001). If there is no such violation, the inquiry ends here. *Id*.

If a violation can be adequately stated, the court next asks whether the right was clearly established. *Id*. Providing guidance in determining whether a right was clearly established, the Court stated, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." *Id*. *Saucier* also provides that an official's reasonable mistake is still cloaked with immunity. *Id.*; *See also, Pearson*, 129 S.Ct. at 823 ("The principles of qualified

immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."). Plaintiff must show that the officers violated a right so clearly established that any official in Defendants' position would have understood that they were under an affirmative duty to refrain from such conduct. *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir.1988), cert. denied, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). In other words, Plaintiff must demonstrate that Defendant's conduct was objectively unreasonable in light of Plaintiff's clearly established rights. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999).

As discussed above, viewing the facts in a light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendants violated Horvath's constitutional rights by recklessly disregarding the excessive risk of harm to Horvath. Horvath had the right to be protected from violence perpetrated by other prisoners. *See Wilson*, 148 F.3d at 600. If the facts alleged are true that Defendants knew the risk of harm, became aware of the altercation, and failed to protect Horvath, then Defendants' conduct was objectively unreasonable. *See Williams*, 186 F.3d at 691.

## IV. CONCLUSION

Accordingly,

15

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **[Docket No. 40, filed April 14, 2014]** is **DENIED** as it pertains to the remaining Defendants, Wayne County, April Williams, Larry Cameron, and Andre Stinson, and deemed **MOOT** as it pertains to all parties that have been dismissed.

**IT IS ORDERED** that Defendants' Motion to Dismiss **[Docket No. 40, filed April 14, 2014]** is deemed **MOOT** as it pertains to Defendant Wayne County Sheriff's Department.

**IT IS FURTHER ORDERED** that Defendant JOHN DOEs 1-5 be terminated pursuant to the Amended Complaint failing to name them as Defendants.

**IT IS SO ORDERED**.

                                            s/Denise Page Hood
                                            Denise Page Hood
                                            United States District Judge

Dated: March 31, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2015, by electronic and/or ordinary mail.

                                            s/LaShawn R. Saulsberry
                                            Case Manager